IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE JANEEN WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY | : | No. 23-cv-1128 |
| | : | |

## MEMORANDUM OPINION

**CRAIG M. STRAW**                                                                  May 23, 2024
**United States Magistrate Judge**

      Jacqueline Janeen Williams seeks review of the Commissioner's decision denying her applications for Supplemental Social Security (SSI) and Disability Insurance Benefits (DIB). Doc. 12, at 1; R. 83. The matter was referred to me on consent of the parties.[1] For the following reasons, I grant Williams's request for review, vacate the Commissioner's decision, in part, and remand the case for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

      On January 20, 2020, Williams filed applications for DIB and SSI benefits under Titles II and XVI of the Social Security Act. R. 83; 354; 361. In both applications, Williams alleged she became disabled on December 31, 2019. Id. The claims were denied initially on February 4, 2021, and then again on reconsideration on July 19, 2021. R. 83; 246; 265. Williams filed a written request for a hearing. R. 83; 276-77. Due to the COVID-19 Pandemic, the Administrative Law Judge (ALJ) held a telephone hearing on November 18, 2021. R. 83; 114; 321-22. Counsel represented Williams at the hearing. R. 115. Vocational Expert (VE) Patricia Posey testified. R. 83; 114-15.

---

[1] See Doc. 8; 8 U.S.C. § 636(c)(1) & Rule 73, Fed. R. Civ. P.

The ALJ issued a written decision partially denying benefits on March 14, 2022.  R. 105.  The ALJ determined that Williams was not disabled prior to January 12, 2022, but became disabled on that date when Williams's age category changed.[2]  R. 105.  Williams filed a request for review of the ALJ's decision denying her benefits prior to January 12, 2022, which the Appeals Council denied.  R. 1-4; 347-50.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  R. 2; 20 C.F.R. §§ 404.981, 416.1481.  Williams's counsel then brought this action in federal court.  Doc. 1.

Williams filed a Brief and Statement of Issues in Support of Request for Review.  Doc. 12.  Defendant filed a Response to Request for Review of Plaintiff.  Doc. 15.  Williams filed a Reply Brief in Support of Request for Judicial Review.  Doc. 16.

## II.     LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of

---

[2] Williams turned fifty years old on January 12, 2022, changing her age category from a younger individual age 45-49 to an individual closely approaching advanced age.  R. 103-05; 20 C.F.R. §§ 404.1563(c), (d); 416.963(c), (d).

2

        impairments ("Listings," see 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.     If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the Residual Functional Capacity (RFC) to perform their past work; and

5.     If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies in light of their age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007) (citation omitted).

    The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)). It is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck, 181 F.3d at 431).

## III.     ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Williams had not engaged in substantial gainful activity since the alleged disability onset date, December 31, 2019.  R. 85.  The ALJ found that Williams had several severe impairments including disorders of the spine, osteoarthritis, epilepsy with headaches, obesity, depressive disorder, and anxiety disorder.  R. 85; see also 20 C.F.R. §§ 404.1520(c), 416.920(c).  These impairments or combination of impairments did not, however, meet or medically equal the severity of one of the Listings.  R. 86-91; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  When evaluating Williams's mental impairments pursuant to the "paragraph B" criteria, the ALJ found she had mild limitations understanding, remembering, or applying information, and interacting with others.  R. 90.  Williams had moderate limitations concentrating, persisting, or maintaining pace and adapting or managing herself.  R. 90-91.  Therefore, Williams's mental impairments did not satisfy the "paragraph B" criteria.[3]  Id.  The ALJ also found that the evidence failed to establish the presence of any "paragraph C" criteria.[4]  R. 91.

Considering the entire record, the ALJ found that Williams had the RFC to perform sedentary work.  R. 91; 20 C.F.R. §§ 404.1567(a), 416.967(a).  The ALJ decided that Williams can occasionally balance, stoop, crouch, climb ramps and stairs and can frequently handle, finger, push, pull, reach in all directions (including overhead with both upper extremities), and operate foot controls with both lower extremities.  R. 91.  However, Williams can never kneel, crawl, or climb ladders, ropes, or scaffolds.  Id.  The ALJ also found that Williams must avoid

---

[3] See 20 C.F.R. pt. 404, subpt. P, app. 1.
[4] See 20 C.F.R. pt. 404 subpt. P, app. 1, § 12.00(G)(2)(b)-(c).

more than frequent exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations.  Id.  Williams can perform in a moderate or quieter environment and must avoid exposure to hazards including moving machinery and unprotected heights.  Id.  Additionally, the ALJ determined Williams can perform unskilled work with routine and repetitive tasks requiring no more than normal breaks and frequent changes in the work setting.  Id.

Williams has been unable to perform any past relevant work in a composite job as a childcare attendant and gym teacher since December 31, 2019.  R. 103; 20 C.F.R. §§ 404.1565, 416.965.  Relying on the testimony of VE Posey, the ALJ determined that prior to January 12, 2022, based on Williams's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that she could have performed including polisher, price marker, and folder.  R. 104; 141; see also 20 C.F.R. §§ 404.1566(b), 416.969, 416.969a.  Therefore, the ALJ found that Williams was not disabled prior to January 12, 2022.  R. 104.  Nevertheless, the ALJ determined that beginning on January 12, 2022, no jobs existed in the national economy that Williams could perform given her age, education, work experience, and RFC.  R. 104-05.  Consequently, the ALJ found that Williams was disabled beginning January 12, 2022.  Id.

Williams seeks review of the ALJ's decision only to the extent it found she was not disabled prior to January 12, 2022.  Doc. 12, at 9.  Williams asserts the ALJ erroneously rejected the opinion of her treating neurologist, resulting in an RFC unsupported by substantial evidence.  Id. at 3-10.  The Commissioner argues that substantial evidence supports the ALJ's findings and that she was not disabled before January 12, 2022.  Doc. 15, at 7-11.

IV.  **FACTUAL BACKGROUND**

   A. **Medical opinions**

Williams has suffered from epilepsy with focal impaired awareness seizures with rare transitions to bilateral tonic-clonic seizures since 2011.[5]  R. 482; 485.  From July 24, 2018 to July 31, 2018, Williams was admitted for pre-surgical evaluation due to her continued seizures.  R. 521-40.  During observation, she was weaned off levetiracetam, an anti-epileptic drug (AED).  R. 531-32.  A total of five to six seizures were recorded during this time, with her video EEG diagnostic for focal epilepsy.  R. 532-33; 538-39.  Based on the evaluation, Williams was instructed to stop taking levetiracetam and prescribed lacosamide.  R. 531.  In February and March 2019, neurologists recommended, and Williams was approved to receive responsive neurostimulation (RNS) surgery.  R. 485-89; 1202.

At her March appointment, neurologist Chengyuan Wu, M.D., reported Williams's seizures occur monthly but noted it is difficult to assess how many happen per month because "they must be witnessed in order for her to realize" they occurred.  R. 485.  Brain imaging via MRI showed bilateral mesial temporal sclerosis; a PET scan demonstrated bilateral temporal hypometabolism.  Id.  Her neurological evaluation "revealed bilateral mesial temporal defects with declines in verbal [and] visual memory."  Id.  Williams visited the emergency room on October 11, 2019 due to a possible seizure followed by an episode of confusion.  R. 1120.  On

---

[5] Williams's request for review focuses on the ALJ's findings regarding her neurologist's opinion and the limitations caused by her seizures.  Doc. 12, at 3-9.  Accordingly, the medical opinions of Patrick Waters, D.O. (consultative internal medicine examination), Martha Diprinzo, M.A. (consultative mental status examination), and Genevieve Minick, M.D. (provided physical assessment related to Williams's back pain) are not discussed in any detail here except to the extent the ALJ mentioned the opinions when she considered the neurologist's opinion.

November 5, 2019, Williams underwent a 24-hour EEG. R. 1109. Neurologist Christopher T. Skidmore, M.D., reviewed the findings and determined they were consistent with a history of focal epilepsy with bilateral mesial temporal sclerosis. R. 1228-29.

On December 31, 2019, Williams underwent implantation of an RNS device and hippocampal electrodes. R. 636-40. Dr. Skidmore provided a residual functional capacity questionnaire addressing Williams's seizures on February 27, 2020. R. 1447-49. He reported that Williams suffered from medically intractable focal epilepsy. Id. at 1447. She experiences one or two localized seizures per month that last 60-120 seconds. Id. He stated these seizures can occur without warning and do not happen at any particular time of day. Id. The seizures have postictal manifestations of confusion and exhaustion, preventing Williams from working for the next twenty-four hours. Id. at 1447-48. Dr. Skidmore opined that Williams would be absent from work one-to-two times per month because of the seizures. Id. at 1447. The questionnaire mentioned Williams has a history of injury during her seizures and experiences incontinence. Id. at 1448. Dr. Skidmore also reported Williams's seizures would likely disrupt co-workers and would require greater supervision than an unimpaired worker. Id. Dr. Skidmore opined that Williams was not permitted to drive or operate machinery and must avoid heights and hazardous chemicals. Id.

On March 23, 2020, Williams reported to Dr. Skidmore at a telemedicine appointment having no seizures since the surgery, even though data from the RNS showed four seizures in February and March, all at night. R. 1234. In June 2020, Dr. Skidmore found that the RNS device recorded 111 seizures since February 20, 2020, with the saturations seemingly correlating with clinical seizures. R. 1245. At a September 30, 2020 office visit, Dr. Skidmore noted

7

Williams had decreased concentration and poor short-term memory.  R. 1258.  Williams reported to him having one seizure since her last office visit in June.  R. 1259.

On December 9, 2020, Williams visited the emergency room after falling down a flight of stairs due to a seizure.  R. 1048.  During a neurological examination later that day, Williams's RNS device was reprogrammed.  Id. at 1277.  She told the doctor she had a seizure once per month.  R. 1277; 1281.  Williams said she had forgotten to take her AED the morning she experienced the seizure.  R. 1168.

In March 2021, Williams reported to Kelly Pearson-Caravetta, C.R.N.P., ("N.P.") she had episodes of confusion three to four times per week, but claimed she had no seizures since December 9, 2020.  R. 1294.  At a June 2021 office visit, Williams reported episodes of confusion one to two times per week, however, no seizures.  R. 1565.  Three months later at her office visit, Williams stated she had two seizures since her last visit.  R. 1575.  At that visit, N.P. Pearson-Caravetta, who Dr. Skidmore supervised, noted decreased attention and poor short-term memory.  R. 1579-80.

### B.  Non-medical evidence

Williams graduated from high school and earned an associate's degree.  R. 103; 119.  She has past relevant work as a childcare attendant and gym teacher.  Id.  Williams last worked prior to December 31, 2019 when she had the RNS implantation surgery.  R. 119-20; 636-40.  As to other physical limitations, Williams testified her sciatic nerve damage on her right side limits her movements and "prevents [her] from doing so much."  R. 134.  Her knee was "doing much better" and she stated she "won't complain about [it]."  R. 135.  Williams can walk two blocks before experiencing back pain, stand for about twenty minutes, sit for a half hour, and carry two

gallons of water for a very short time. R. 138. Williams has headaches at least three days per week. R. 139. The headaches sometimes last all day, but taking Tylenol helps. Id. Williams occasionally experiences incontinence. R. 133. Williams testified that after a seizure, she feels "out of it" and occasionally her arms become numb. R. 132. It takes her at least an hour or two to feel normal after a seizure. Id. The seizures also affect her memory—Williams claims that if she does not write something down, she will forget it. R. 132-33.

Williams lives with her adult son and her thirteen-year-old granddaughter. R. 125. She watches her granddaughter while her son is at work. Id. On a typical day, she also cleans and visits her mother in a rehabilitation facility. R. 136. Williams does not have a driver's license but has no difficulty taking public transportation. R. 123; 136. As long as she is "feeling okay," Williams is able to prepare meals, do laundry, and go to the grocery stores without assistance. R. 137.

**V.     DISCUSSION**

**A. The ALJ did not properly evaluate Dr. Skidmore's opinion.**

Williams's only claim is that the ALJ erroneously rejected the opinion of Dr. Skidmore resulting in an RFC determination that is unsupported by substantial evidence. Doc. 12, at 3-9. Specifically, Williams argues the ALJ "cherry picked" the evidence upon which she relied, ignored evidence of record supporting Dr. Skidmore's opinion that Williams would be absent from work one-to-two times per month, and fails to offer "any particularized explanation for rejecting the opinion of Dr. Skidmore." Doc. 12, at 6.

An ALJ must evaluate all record evidence in making a disability determination. Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 2009). The ALJ's decision must include a "clear and satisfactory explication of the basis on which it rests" sufficient for a reviewing court "to

perform its statutory function of judicial review." Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981); Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

When considering medical evidence, the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ instead assesses the persuasiveness of a medical opinion by evaluating several factors including supportability, consistency, the medical source's relationship with the claimant, the source's specialization, and the source's familiarity with other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a); 416.920c(a); 404.1520c(c); 416.920c(c). When determining whether a medical opinion is persuasive, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 404.1520c(c); 416.920c(b)(2).

While the ALJ is not required to explain all factors, the ALJ must explain how she considered supportability and consistency. Id. Supportability considers how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Consistency is the measure of how consistent "a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).  The ALJ need not explicitly mention supportability or consistency when analyzing the factors.  See Kaschak v. Kijakazi, No. 21-354-E, 2023 U.S. Dist. LEXIS 36326, at *n.2 (W.D. Pa. Mar. 3, 2023) (noting "there are no 'magic words' an ALJ must use to articulate his or her consideration of supportability and consistency") (citing Cooper v. Comm'r of Soc. Sec., 563 F. App'x. 904, 911 (3d Cir. 2014)).

Here, the ALJ found Dr. Skidmore's opinion unpersuasive.  R. 100.  The ALJ discussed Dr. Skidmore's February 2020 assessment:

> Dr. Skidmore opined in February 2020 that the claimant can occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds. In an 8-hour workday, Dr. Skidmore opined the claimant can stand for at least 6 hours and sit for at least 6 hours. Dr. Skidmore opined the claimant would be absent from work once or twice a month. However, Dr. Skidmore's opinion is not consistent with the medical evidence and other evidence of record. Specifically, Dr. Skidmore overstates the expected frequency of the claimant's absences from work. As discussed above in the analysis of Dr. Minick's opinion, the findings on medical imaging and on examination support greater functioning. Therefore, I find Dr. Skidmore's opinion unpersuasive.

Id. (internal citations omitted).

The ALJ failed to properly consider supportability when evaluating Dr. Skidmore's opinion.  See 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  When finding Dr. Skidmore's opinion was unpersuasive, the ALJ did not discuss how the opinion was not supported by objective medical evidence or provide adequate support for that finding.  See Cotter, 642 F.2d at 704-05; Fargnoli, 247 F.3d at 42; R. 100.  Instead, the ALJ summarily dismissed Dr. Skidmore's opinion.  R. 100.  For example, the ALJ found that Williams's absences were "not consistent with medical evidence and other evidence of record" without explaining, with any specificity,

11

how the objective medical evidence does not support his opinion. R. 100. Thus, the ALJ's decision lacks a supportability analysis of Dr. Skidmore's opinion.

Moreover, the ALJ failed to properly evaluate the consistency of Dr. Skidmore's opinion. The ALJ relied on her previous analysis of Dr. Minick's opinion when she rejected Dr. Skidmore's opinion. R. 100. The ALJ rejected Dr. Minick's opinion as to Williams's exertional limits and projected absences from work[6] on the grounds that these limitations were inconsistent with prior medical imaging and examinations of Williams. Id. Importantly, however, while Dr. Minick assessed her limitations based on back pain, Dr. Skidmore assessed Williams's limitations based on her epilepsy. R. 720-21; 1447-49. Tellingly, the assessment that Dr. Skidmore completed is titled "Seizures Residual Function Capacity Questionnaire" and asks Dr. Skidmore to answer questions regarding Williams's seizures. R. 1447. Dr. Minick, on the other hand, completed a physical assessment addressing Williams's lumbar back pain. R. 720.

The ALJ did not provide in her opinion any corresponding independent analysis of Dr. Skidmore's limitations based on Williams's seizures except for referencing the analysis of Dr. Minick's opinion. Id. Here, the ALJ cannot rely on her analysis of Dr. Minick's opinion and equate her reasoning to Dr. Skidmore's opinion, a neurologist, in order to justify why she found Dr. Skidmore's opinion unpersuasive. The ALJ failed to explain in sufficient detail why Dr. Skidmore's opinion was not consistent with the other medical sources and nonmedical sources in the record. For these reasons, the ALJ's decision regarding Dr. Skidmore's opinion is not supported by substantial evidence.

---

[6] Dr. Minick stated the claimant "cannot stand or walk and can sit for 1 hour total. She opined the claimant would need to take unscheduled breaks at least every hour for 5-10 minutes. Dr. Minick opined the claimant would be absent from work three or four times a month." R. 100.

Based on the ALJ's limited and misapplied explanation as to why Dr. Skimore's opinion is unpersuasive, I cannot determine or hold that any error in the ALJ's decision was harmless. See Sibio v. Kijakazi, No. 4:20-CV-1339, 2022 WL 743879, at *6-7 (M.D. Pa. Mar. 11, 2022) (remanding case because ALJ's failure to address consistency of physician's opinion with record as whole was not harmless error because if ALJ analyzed consistency and accepted doctor's opinion, plaintiff would likely be precluded from full-time competitive work). Among other things, Dr. Skidmore opined that Williams would miss one or two days per month because of her seizures. R. 1447-49. VE Posey testified that if an employee "is missing two days a month by the third or fourth month I believe the employment could be in question." R. 144. Because adopting Dr. Skidmore's limitations could have altered the ALJ's RFC and preclude Williams from competitive work, the error is not harmless. See Sibio, 2022 WL 743879, at *7. For these reasons, I remand this case to the Commissioner for further consideration of Dr. Skidmore's opinion in light of this decision.

## VI.     CONCLUSION

The ALJ's decision to reject Dr. Skidmore's opinion is not supported by substantial evidence. Accordingly, Williams's request for review (Doc. 1) is **GRANTED**. The final decision of the Commissioner is **VACATED,** in part, and the case is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An appropriate order follows.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge
